UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Court File No. 15-cr-16 (ADM/LIB) (1) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Malcolm Roy Evans, | |
| Defendant. | |

This matter comes before the undersigned United States Magistrate Judge upon Defendant Malcom Roy Evans' ("Defendant") Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure, [Docket No. 25]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motions hearing on March 13, 2015, regarding the parties' pretrial motions.[1]

For reasons discussed herein, the Court recommends that Defendant's Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure, [Docket No. 25], be **DENIED**.

## I.   BACKGROUND

Defendant is charged with one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and 2113(d); one count of attempted carjacking, in violation of 18 U.S.C. § 2119(1); one count of carjacking, in violation of 18 U.S.C. § 2119(1); one count of kidnapping, in violation of 18 U.S.C. § 1201(a)(1); and one count of forcing a person to accompany the defendant while avoiding and attempting to avoid apprehension, in violation of 18 U.S.C. § 2113(e). (Indictment [Docket No. 1]).

---

[1]The Court addressed the parties' pretrial discovery motions by separate order, [Docket No. 31].

II.     **DEFENDANT'S MOTION TO SUPPRESS FRUITS OF UNLAWFUL ARREST AND SEARCH AND SEIZURE, [Docket No. 25]**

Defendant moves the Court to suppress any physical evidence gathered during the execution on December 30, 2014, of a warrant to search two hotel rooms he had rented and occupied. At the motions hearing on March 13, 2015, Defendant confirmed that his motion is limited to a "four-corners" challenge concerning the sufficiency of the probable cause articulated in the affidavit submitted in support of the application for the state court search warrant. (March 13, 2015, Motions Hearing, Digital Recording at 10:50:30 a.m.).

A. **Standard of Review**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Courts use a "totality of the circumstances test . . . to determine whether probable cause exists." United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and

internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005); edits in Wiley). In addition, the issuing court's "determination of probable cause should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclude[ing]' that probable cause existed." Id. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

## B. Warrant Background

On December 30, 2014, Detective Joshua Loos[2] of the Fargo, North Dakota, Police Department submitted an application for a warrant to search adjoining rooms 130 and 132 in a Motel 6 located at 1202 36th Street South in Fargo, North Dakota. (See, Gov't Ex. 1, 1). The affidavit that Detective Loos drafted and submitted in support of the application set forth the following:

On December 29, 2014, at approximately 11:50 a.m., a black male armed with a sawed-off double-barreled shotgun robbed a bank located inside a Hornbacher's grocery store located at

---

[2] The affidavit in support of the search warrant application states that Det. Loos has worked for the Fargo Police Department since 2006, and, as of December 30, 2014, was assigned as a personal crimes detective. (Gov't Ex. 1 at 2). Detective Loos has more than 500 hours of law enforcement related training and has been a trained crime scene investigator since 2009. (Id.).

101 11th Street South in Moorhead, Minnesota.  (Id. at 3-4). The robber was wearing an orange stocking cap, a dark, possibly green, scarf pulled over his face, and was wearing a waist length coat. (Id. at 4). According to responding police officers, the robber fled the scene on foot, initially entering an occupied van in the store's parking lot, then proceeding on foot to a liquor store named "99 Bottles" after the occupants of the van exited it. (Id. at 4-5). At the liquor store, the robber demanded that a male there drive him to Fargo. (Id. at 5).

That same day, Officer Sara Cruz received a call that a robbery suspect in Moorhead had carjacked a pickup truck and forced the driver, Raymond Blaha, to transport him to Fargo. (Id. at 3). Blaha told Officer Cruz that a black male armed with a sawed-off double-barreled shotgun entered his truck while it was parked in the 99 Bottles parking lot, pointed the shotgun at him, and told him to drive them both to the West Acres shopping mall in Fargo. (Id.). The carjacker wore a dark colored coat and was carrying a blue backpack. (Id.). Blaha drove the truck to the West Acres shopping mall in Fargo as directed. (See, Id. at 3-4). During the drive, the carjacker told Blaha that he had attempted to carjack someone else but that the person had gotten out of the vehicle. (Id. at 4). Once Blaha arrived at the mall's parking lot, the carjacker ordered Blaha out of the truck and drove away in it. (Id.)

Detectives of the Moorhead, Minnesota, Police Department reviewed video surveillance of the bank robbery. (Id. at 5). The detectives believed that it was possible that the robber had arrived at the grocery store on a city bus and reviewed video surveillance recordings from city busses. (Id.). Detective Voxland of the Moorhead Police Department identified a male suspect on the bus video surveillance recordings that he believed was consistent with the robber. (Id.). Detective Voxland noted the following:

At 9:33 a.m., the suspect boarded a bus at the New Life Center in Fargo. (Id.). The suspect was carrying a black backpack and wearing a tan or brown jacket, blue jeans, and a dark colored hat with light colored horizontal stripes. (Id.). After transferring busses, the suspect got off the bus at the intersection of 11th Street and 2nd Avenue south in Moorhead at 11:20 a.m. (Id.). That bus stop is near the Hornbacher's grocery store located at 101 11th Street South. (See, Id. at 3, 5). At 12:34 p.m., the suspect boarded another city bus at the West Acres shopping mall in Fargo. (Id. at 5). At that time, the suspect was carrying a black backpack and wearing a red button-down long-sleeved shirt, but not wearing a jacket. (Id. at 5). The suspect exited the bus at 12:58 p.m. at the intersection of 13th Avenue and 34th Street South. (Id.). The suspect was seen walking north from the intersection. (Id.). A Motel 6 is located approximately one block north of the intersection. (Id.). At 2:12 p.m., the suspect boarded a bus at that same intersection. (Id.). The suspect did not appear to have a backpack when boarding the bus. (Id.). After transferring busses, the suspect exited the bus at the New Life Center in Fargo at approximately 3:26 p.m. (Id.).

On December 30, 2014, Detective Nelson of the Moorhead Police Department interviewed D.A.S. and R.E.L., to both of whom he showed a picture of the suspect taken from the city bus surveillance videos. (Id. at 6). D.A.S. stated that the person in the surveillance photo was known to him as "Malcolm", that "Malcolm" was known to stay at the New Life Center in Fargo, that D.A.S. had given Malcolm the hat worn by the suspect in the surveillance photo, and that Malcom possessed a sawed-off shotgun. (Id.). R.E.L. identified the suspect in the surveillance photo as Malcolm Evans and told Detective Nelson that Malcom Evans had sawn off the barrel of what R.E.L. believed to be a rifle in R.E.L.'s apartment at some point in the week before the interview. (Id.).

Det. Nelson also interviewed employees at the New Life Center, showing them the photograph of the suspect taken from the city bus surveillance video. (Id.). The interviewed employees initially stated that the suspect appeared to be an individual known to them as Malcolm. (Id.). After reviewing surveillance from the New Life Center, the employees identified the suspect as Malcolm R. Evans, stated that Evans also appeared in images in the New Life Center surveillance system, and that, in those images, he was wearing some of the same articles of clothing the suspect depicted in the photographs taken from the city bus surveillance videos was wearing. (Id.).

Detective Nelson also reviewed known photographs of Malcolm Roy Evans and believed that the person in those photographs was the same person depicted in the city bus surveillance photographs. (Id.).

Detectives of the Moorhead Police Department discovered that Defendant had rented rooms 130 and 132 in a Motel 6 in Fargo. (Id.). During the afternoon of December 30, 2014, officers of the Fargo and Moorhead Police Departments set up surveillance of those hotel rooms. (Id.). The officers observed a white male exit one of the rooms and made contact with him. (Id.). The contacted individual told the officers that Defendant was inside the room. (Id.). Detective Loos learned from Fargo Police Detective Collin Gnoinsky that the two rooms under surveillance were connected by a pass-through door that was open. (Id. at 6).

Detective Gnoinsky also informed Detective Loos that Defendant at some point exited the rooms. (Id.). Defendant was arrested and taken into custody by the Fargo Police Department where he was interviewed. (Id.). While Evans was being interviewed, Detective Loos drafted and submitted the application for a warrant to search rooms 130 and 132 of the Motel 6 located at 1202 36th Street South in Fargo, North Dakota, for currency, a double barreled shotgun,

firearms, a black backpack, and various articles of clothing that the robber was depicted as wearing on the bank surveillance videos and that the suspect was depicted as wearing in the city bus surveillance videos. (See, Id. at 1, 2, 6, 7). On December 30, 2014, a Magistrate Judge of the East-Central Judicial District of the State of North Dakota concluded that there was probable cause to believe that contraband or evidence of a crime could be found in the hotel rooms and issued a warrant to search the rooms.  (Id. at 8).

C. **Analysis.**

Defendant challenges the validity of the search warrant, asserting that Detective Loos' affidavit in support of the application for a warrant did not provide probable cause to believe that evidence of a crime could be found in the searched hotel rooms. Based on the information provided in Detective Loos's affidavit in support of the application for the search warrant, the state Magistrate Judge had a substantial basis upon which to conclude that probable cause existed to issue the December 30, 2014, search warrant for the hotel rooms.

The statements of R.E.L., D.A.S., and the employees of the New Life Center provided the state Magistrate Judge with a substantial basis to conclude that Defendant was the suspected individual depicted riding the city bus on December 29, 2014. Defendant challenges the identifications made by R.E.L. and D.A.S., asserting that information obtained during discovery indicates that the two had a close personal relationship with each other, that the police showed the bus photo to R.E.L. and D.A.S. in a highly suggestive manner, the statements of R.E.L. and D.A.S. were unreliable, were conflicting with regard to whether Evans owned a sawed-off shotgun or a sawed-off rifle, and were not corroborated.

Defendant's challenges to the statements made by R.E.L. and D.A.S. are unpersuasive. First, Defendant's speculation that R.E.L. and D.A.S. may have had a reason to corroborate each

other's statements due to a close personal relationship is based on information Defendant obtained after the search warrant issued and was not in the affidavit in support of the application for a search warrant. This Court may only review the sufficiency of the probable cause in the search warrant application on the basis of the information provided to the issuing judge. Wiley, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (quoting Solomon, 432 F.3d at 827). Defendant has provided nothing to indicate that any information supporting his assertion was presented to the Magistrate Judge who issued the search warrant.[3]

Defendant's other arguments challenging the identifications made by R.E.L. and D.A.S. are similarly unavailing. The identities of R.E.L. and D.A.S. are known to the police and, as such, there is nothing to indicate that the two are informants rather than cooperating citizen witnesses. Contrary to Defendant's suggestion, this Court traditionally does not require that information provided by cooperative citizens be supported by other indicia of reliability. See, United States v. Papakee, No. 06CR162 1 LRR, 2007 WL 891717, at *5-6 (N.D. Iowa Mar. 21, 2007) (noting that a magistrate may credit information provided by a concerned citizen without requiring additional indicia of reliability). Even if other indicia of reliability were required, such indicia were presented in the affidavit in support of Detective Loos' search warrant application. The identities of R.E.L. and D.A.S. were known to the police and Defendant acknowledges that both provided in person statements to Detective Nelson. See, United States v. Solomon, 432 F.3d

---

[3]Defendant has also provided nothing other than the argument of his counsel to support his assertion about a relationship between R.E.L. and D.A.S. It is well established that the arguments of counsel are not themselves evidence.  See, e.g., United States v. Mullins, 446 F.3d 750, 760 (8th Cir. 2006) (noting the district court properly instructed the jury to not consider the arguments of counsel as evidence). The Court further notes that Defendant has not sought a Franks hearing with regard to his speculation that the omission of the claimed relationship between R.E.L. and D.A.S. somehow affected the state magistrate's finding of probable cause. See, United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002) ("In order to obtain a Franks hearing, a defendant must make a substantial preliminary showing of a false or reckless statement or omission and must also show that the alleged false statement or omission was necessary to the finding of probable cause.") (citation omitted).

824, 827–28 (8th Cir. 2005) (citing <u>Florida v. J.L.</u>, 529 U.S. 266, 270 (2000) (noting that an known informant is more reliable than one whose identity is not known); <u>see also</u>, <u>United States v. Robertson</u>, 39 F.3d 891, 893 (8th Cir. 1994) (noting that an in-person statement allows the affiant to assess and informant's veracity). In addition, the statements of the employees of the New Life Center corroborated details of R.E.L.'s and D.A.S.'s statements, namely that the person in the photo shown by Detective Nelson was named Malcolm Evans and that Evans at times stayed at the New Life Center. <u>Solomon</u>, 432 F.3d at 828 ("the corroboration of minor, innocent details can suffice to establish probable cause ...") (citations omitted).

In addition, Defendant's contention that the police used a suggestive identification technique is inapposite to Detective Nelson's use of a single photo to identify Defendant here. Detective Nelson showed the image of Defendant taken from the city bus surveillance video to R.E.L., D.A.S., and the employees of the New Life Center, people who were already familiar with Defendant. The danger in asking an eye witness to a crime to identify the perpetrator via an improperly suggestive lineup is the risk of prejudice that may arise from the suggestiveness causing the "eyewitness to falsely recollect the face of the person who committed the offense." <u>United States v. Dobbs</u>, 449 F.3d 904, 910 (8th Cir. 2006). "[W]hen someone already familiar with a suspect is asked to comment on whether a recorded voice or image portrays the suspect, these concerns are absent." <u>Id.</u> Accordingly, the issuing state Magistrate Judge was allowed to rely on the statements of R.E.L. and D.A.S. identifying Defendant as the suspect depicted on the city bus.  For those same reasons, the issuing Magistrate Judge could also credit the statements of R.E.L. and D.A.S. that Defendant possessed a rifle or a shotgun from which he had sawed off the barrel.

The information included in Detective Loos' affidavit in support of the search warrant also provided the issuing Magistrate Judge with a substantial basis to believe that Defendant robbed the bank and then forced Blaha, at gunpoint, to drive him to the West Acres shopping mall in Fargo. Defendant argues that the only information in the affidavit linking him to the robbery is the photo of him on the city bus on December 29, 2014, and Detective Voxland's statement, based on a review of surveillance footage, that he believed that the person on the bus was consistent with the person who robbed the bank.

That is not the only evidence linking Defendant to the robbery and the carjacking. As discussed above, there were statements identifying Defendant as the suspect bus passenger and indicating that he possessed a sawed-off shotgun or sawed-off rifle. Combined with the video evidence tracking the suspected bus passenger's travels on the city bus system, the information in the affidavit placed Defendant getting off the bus at a stop associated with the grocery store approximately at 11:20 a.m. The officers who responded to the bank robbery reported that a black male armed with a sawed-off double-barreled shotgun robbed the bank in that store half an hour later and fled on foot after unsuccessfully attempting to carjack an occupied van in the grocery store parking lot.  The reports also indicate that the robber went to the parking lot of a local liquor store when he forced a driver a vehicle to drive him to Fargo. That information was corroborated by Blaha who said that that he was in the parking lot of a Moorhead liquor store when a black man armed with a double barreled shotgun got into his car and ordered him to drive the carjacker to the West Acres shopping mall in Fargo and that, during the trip, the carjacker told Blaha that he had attempted to get into another vehicle but that the occupants had fled. Once Blaha and the carjacker arrived at the parking lot of the West Acres shopping mall, the carjacker ordered Blaha out of the car and drove away.  At 12:34 p.m., Defendant boarded a bus

at the West Acres shopping center. The Court concludes that the above-listed information provided the issuing Magistrate Judge with a substantial basis to believe that Defendant had committed the bank robbery and had carjacked Blaha's pickup truck.[4]

Finally, Defendant argues that the affidavit did not provide a nexus between the evidence of the bank robbery or carjacking and the rented hotel rooms. The Court disagrees. As discussed above, there was a substantial basis for the issuing Magistrate Judge to believe that Defendant committed both the bank robbery and the carjacking. At the time of the carjacking, the perpetrator was not wearing items of clothing worn when robbing the bank.  Although it is possible the perpetrator simply got rid of the items, it is also possible that the perpetrator continued to carry them with him.  Approximately 40 minutes after the bank robbery, Defendant was observed boarding a bus at the West Acres shopping center carrying a black backpack in which he could have stored the missing outer garments and sawed-off shotgun. Defendant rode the city bus to an intersection where he got off and walked north. A Motel 6, at which Defendant was later discovered to have rented the rooms to be searched pursuant to the warrant, was located approximately one block in that direction. Approximately an hour later, Defendant once again boarded a city bus at that intersection, at which time he did not appear to be carrying a backpack. The Court concludes that the above information provided the issuing Magistrate Judge with a substantial basis to believe that the backpack and evidence of the bank robbery and the carjacking could be found in the motel rooms rented by Defendant.

---

[4] Defendant also argues that the images of him on the bus and the images of the bank robber are inconsistent because the photograph shows that the bank robber was wearing different outer garments.  Although the connection between the two would be stronger if the images showed the bank robber wearing the same outer garments that Defendant had worn on the bus, the differences in outer garments did not vitiate the substantial basis the issuing Magistrate Judge had to link Defendant to the bank robber that had been provided by the other evidence in Det. Loos' affidavit. The Court's conclusion is supported by the fact that outer garments are easily removable, as noted by the fact that Defendant is seen at one point on the bus wearing a tan or brown jacket, and later seen on the bus wearing no jacket at all.

In summary, the affidavit authored by Detective Loos provided the issuing state Magistrate Judge with a substantial basis to believe that Defendant robbed the bank and later carjacked a truck on December 29, 2014, that Defendant rode the bus to the bank robbery and away from the destination at which the carjacking terminated, and that Defendant stopped in his bus travels long enough to rent hotel rooms in which he may have deposited evidence of the robbery and the carjacking. Accordingly, Detective Loos' affidavit provided the issuing state Magistrate Judge with a substantial basis to conclude that probable cause existed to believe that evidence of those crimes could be found in the hotel rooms identified in the search warrant application.

### C.   Conclusion

Because Detective Loos' affidavit provided probable cause to believe that evidence of a crime could be found in the hotel rooms identified in the search warrant application, the Court recommends **DENYING** Defendant's Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure, [Docket No. 25].

## IV.   CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Defendant's Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure, [Docket No. 25], be **DENIED**.

Dated: March 25, 2015                                    s/Leo I. Brisbois
                                                        Leo I. Brisbois
                                                        U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by April 8, 2015**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by April 22, 2015**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.