**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,

        Plaintiff,

v.

Malcolm Roy Evans,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 15-16 ADM/LIB

___

Thomas M. Hollenhorst Esq., Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, for Plaintiff.

James S. Becker, Esq., Office of the Federal Defender, Minneapolis, MN, for Defendant.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Malcolm Roy Evans's Objections [Docket No. 39] to Magistrate Judge Leo L. Brisbois's March 25, 2015 Report and Recommendation [Docket No. 34] ("R&R"). In the R&R, Judge Brisbois recommends denial of Evans's Pretrial Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure[1] [Docket No. 25]. After a thorough de novo review of the record and for the reasons stated below, Evans's Objections are overruled and Judge Brisbois's R&R is adopted.

## II. BACKGROUND

At approximately 11:50 a.m. on December 29, 2014, a black male armed with a sawed-

___

[1] Although Evans's motion is captioned as "Defendant's Pretrial Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure," the motion itself seeks to suppress only "evidence obtained as a result of the December 30, 2014, search of Rooms 130 and 132 of Motel 6, 1202 36th Street South, Fargo, North Dakota." Def.'s Mot. to Suppress at 1. Evans raises no objections related to his arrest.

off shotgun robbed a bank located inside a Hornbacher's grocery store in Moorhead, Minnesota. The robber wore an orange stocking cap, a dark waist length coat, as well as a dark scarf which covered part of his face. The robber exited to the store's parking lot, where he attempted a carjacking by entering an occupied van. The van's occupants, however, fled from the vehicle.

Later that same day, a carjacking occurred in the parking lot of a liquor store in Moorhead. The victim, Raymond Blaha, reported that a black male with a sawed-off shotgun entered his truck and directed him to drive to the West Acres shopping mall in Fargo, North Dakota. According to Blaha, the carjacker wore a dark colored coat and carried a blue backpack. During the drive to West Acres, the carjacker told Blaha that he had previously attempted to carjack another vehicle, but the driver of the car had escaped. After arriving at the West Acres Mall, the carjacker forced Blaha from the vehicle and drove away.

Upon reviewing video surveillance of the bank robbery, investigating law enforcement officers believed the robber may have arrived at Hornbacher's via the city bus system. Moorhead Police Department Detective Voxland identified a male passenger from bus surveillance photos that he believed was consistent with the description of the bank robber. That male boarded a bus at the New Life Center in Fargo on the morning of the robbery at approximately 9:30 a.m., wearing a brown jacket, blue jeans, and a dark colored hat with light colored stripes. He also carried a black backpack. At 11:20 a.m., that same person departed the bus at the intersection of 11th Street and 2nd Avenue, a short distance from Hornbacher's. At 12:34 p.m., video surveillance footage showed the individual boarding a bus at the West Acres Mall in Fargo. At this point, the individual carried a black backpack and wore a red, button-down long sleeve shirt.

At 12:58 p.m., the man exited the bus at 13th Avenue and 34th Street South in Fargo. Bus surveillance shows him walking north from the bus stop. A Motel 6 is located one block north of this bus stop at 1202 36th Street South. At 2:12 p.m., surveillance captured the individual boarding a bus at the 13th Avenue and 34th Street South intersection. At this time, the individual was no longer carrying the backpack. The man later exited a bus at approximately 3:26 p.m. at the New Life Center in Fargo.

On December 30, 2014, Moorhead Police Department Detective Nelson interviewed two individuals, D.A.S. and R.E.L. Detective Nelson showed both individuals a picture of the suspect taken from the bus system video surveillance. D.A.S. reported that he knew the man in the photograph as "Malcolm," and that Malcolm often stayed at the New Life Center. D.A.S. also stated that he gave Malcolm the hat he was wearing in the surveillance photo and that Malcolm possessed a sawed-off shotgun. R.E.L. identified the suspect in the surveillance photograph as Malcolm Evans and reported that Evans had sawed off the barrel of a "rifle" in her apartment at some point during the prior week. Detective Nelson also interviewed employees of the New Life Center. The employees also identified the man in the bus surveillance photograph as Malcolm Evans.

During the course of the investigation, detectives determined that Evans had rented rooms 130 and 132 of the Motel 6 at 1202 36th Street South. On the afternoon of December 30, 2014, law enforcement commenced surveillance of the hotel rooms. Officers approached a white male after he exited one of the rooms, and the individual confirmed that Evans was inside. Law enforcement further learned that rooms 130 and 132 were connected by an open pass-through door.

That same day, after Evans departed the hotel, he was arrested and interviewed at the Fargo Police Department. During the interview, Fargo Detective Joshua Loos drafted the search warrant application for rooms 130 and 132. On the evening of December 30, 2014, a state magistrate judge signed the warrant, concluding there was probable cause to believe that contraband or evidence of a crime would be found in the hotel rooms.

Evans filed a suppression motion on March 9, 2015, maintaining that a "four corners" review of the warrant and supporting affidavit reveals a lack of sufficient probable cause to support the search of the Motel 6 rooms. In the R&R, Judge Brisbois recommends denial of the motion, finding that the state magistrate judge had a substantial basis upon which to conclude that probable cause existed for a search of the Motel 6 rooms. Evans now objects to the recommendation to deny his motion to suppress evidence.

## III.  DISCUSSION

### A. Standard of Review

"A district judge may refer to a magistrate judge for recommendation a defendant's motion to dismiss or quash an indictment or information, a motion to suppress evidence, or any matter that may dispose of a charge or defense." Fed. R. Crim. P. 59(b)(1). In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. L.R. 72.2(b). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

**B. Evans's Motion to Suppress**

Evans objects to Judge Brisbois's conclusion that the search warrant for the Motel 6 rooms was supported by sufficient probable cause.[2] Evans's objection is founded on two points: 1) the information used to identify Evans as the individual in the bus surveillance photo was conclusory, misleading, and unreliable; and 2) the supporting affidavit failed to establish a sufficient nexus between the information contained in the affidavit and the Motel 6 rooms searched.

The Fourth Amendment requires a showing of probable cause for the issuance of a search warrant. United States v. Williams, 477 F.3d 554, 557 (8th Cir. 2007). "The rule of probable cause is a practical, nontechnical conception" that seeks the best compromise between the need to safeguard citizens from unreasonable invasions of privacy and the desire to give law enforcement the leeway necessary for the community's protection. Brinegar v. United States, 338 U.S. 160, 176 (1949). In seeking that balance, courts "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant." United States v. Wallace, 550 F.3d 729, 732 (8th Cir. 2008) (quotation omitted). Moreover, the resolution of a probable cause determination "by an issuing judge should be paid great deference by reviewing courts." United States v. Grant, 490 F.3d 627, 631 (8th Cir. 2007) (quotation omitted).

**1. Identification evidence**

Evans first argues that the search warrant lacked probable cause because the supporting

---

[2] Evans additionally objects to Judge Brisbois's factual findings. However, Evans neither offers reasoning for this objection nor identifies what facts merit an alternative finding. A de novo review of the record supports Judge Brisbois's findings of fact. Thus, to the extent Evans is objecting to the factual findings of the R&R, the objection is overruled.

affidavit "fails to offer a credible explanation as to how the subject of the Bus Photo somehow matched the subject of the Bank Footage." Objection to R&R at 7. Evans contends that R.E.L. and D.A.S.'s identifications were unreliable for a variety of reasons and that Detective Voxland's statement linking the individual in the bus surveillance photo to the bank robbery was conclusory. These arguments are unavailing.

In challenging the reliability of R.E.L and D.A.S's statements, Evans emphasizes that the individuals identities were not provided in the supporting affidavit and that nothing in the affidavit explains how R.E.L or D.A.S. are connected to Evans or how they "came to have the knowledge purported" in the affidavit. Id. at 5. Although the identities of R.E.L and D.A.S. have since been disclosed to the defense, the affidavit is devoid of details regarding the identities of R.E.L and D.A.S and how these individuals are each connected to Evans. Judge Brisbois concluded that, because the identities of R.E.L. and D.A.S were known to the police, the individuals were cooperating citizen witnesses whose statements do not need to be supported by other indicia of reliability. Id. at 8.

Even if the Court were to conclude that R.E.L. and D.A.S. should be considered informants for the purpose of evaluating probable cause, sufficient indicia of reliability support issuance of the search warrant. "If some information from an informant is shown to be reliable because of corroboration, it is a permissible inference that other, uncorroborated information is also reliable." United States v. LaMorie, 100 F.3d 547 (8th Cir. 1996) (citing United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995)); see also United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001) ("Even the corroboration of minor, innocent details can suffice to establish probable cause.") (quotation omitted).

6

The information provided by R.E.L. and D.A.S. regarding Evans's possession of the firearm may be considered reliable, even without independent corroboration. Detective Nelson learned from both R.E.L. and D.A.S. that the person in the bus surveillance photo was known as "Malcolm" or "Malcolm Evans," that Evans often stayed at the New Life Center, and that Evans possessed a sawed-off firearm.[3] Employees at the New Life Center confirmed that the individual in the bus photo was Malcolm Evans and he occasionally stayed at the New Life Center. Thus, because some information offered by R.E.L. and D.A.S. was independently corroborated, their statements concerning Evans's firearm may be viewed as reliable. Moreover, because R.E.L. and D.A.S. did not provide their statements to Detective Nelson anonymously, they are considered more reliable than an informant whose identity is undisclosed. See Florida v. J.L., 529 U.S. 266, 270 (2000) (stating that "a known informant . . . can be held responsible if her allegations turn out to be fabricated."); LaMorie, 100 F.3d at 553 ("[P]ersonal contact with an informant can strengthen an officer's decision to rely on the information provided . . . ."). In sum, nothing about R.E.L and D.A.S.'s statements were so unreliable as to alter the state issuing judge's determination of probable cause.

Evans additionally argues that the lack of identification evidence in the supporting affidavit renders the warrant invalid. According to Evans, Detective Voxland's determination that the individual shown in the bus surveillance photo matched the description of the bank

---

[3] Evans takes issue with the fact that R.E.L. and D.A.S.'s statements are inconsistent in describing the type of firearm they each alleged Evans possessed. D.A.S. told Detective Nelson that Evans had a sawed-off "shotgun," whereas R.E.L. identified the firearm as a "rifle." This distinction is not significant. A layperson may not be aware of the particular technical definitions of firearms, and both R.E.L. and D.A.S.'s statements were consistent in alleging the firearm was "sawed-off."

robber rests on a deficient factual foundation.[4]  The affidavit included a conclusory statement regarding Detective Voxland's determination, simply noting that "Detective Voxland told Your Affiant he believes that the video surveillance images of the male who committed the robbery is consistent with the male mentioned in the above mentioned [bus surveillance footage]."

A judge, however, "may draw reasonable inferences from the totality of the circumstances" when making a probable cause determination.  Wallace, 550 F.3d at 732.  Considering the totality of the circumstances, the supporting affidavit provided the issuing judge with a substantial basis to believe that Evans was both the individual depicted in the bus surveillance photo and the suspected bank robber and carjacker.  As Judge Brisbois noted, Detective Voxland's statement and the bus surveillance photo "is not the only evidence linking Defendant to the robbery and the carjacking."  R&R at 10.  R.E.L., D.A.S., and New Life Center employees identified Evans as the bus passenger and confirmed that he sometimes stayed at the New Life Center.  Critically, the video surveillance of the bus passenger tracks with locations of the bank robber.  The individual boarded a bus at the New Life Center the morning of the robbery.  At 11:20, a half hour prior to the robbery, the individual exited the bus a short distance from Hornbacher's, the site of the bank robbery.  Approximately an hour later, the same individual boarded a bus at the West Acres Mall.  The footage therefore aligns with the statement of the carjacking victim that the carjacker (who had a sawed-off firearm with him) forced his way to the vicinity of the West Acres Mall.  Based on these events, the issuing judge

---

[4] Evans also highlights the "stark differences" in the clothing worn by the bank robber and the individual in the bus surveillance photographs.  Objections to R&R at 6.  The Court agrees with Judge Brisbois's reasoning that the issuing judge had substantial basis to link Evans to the robbery, regardless of the differing garments, because "outer garments are easily removable."  R&R at 11 n.4.

had a substantial basis to conclude that there was probable cause to link Evans to the robbery and carjacking, even if the affidavit cited little detail of how Detective Voxland compared the bus surveillance and bank robbery footage.

### 2. Nexus requirement

Evans next objects to Judge Brisbois's probable cause conclusion on the ground that the affidavit did not provide a sufficient nexus between the evidence of the bank robbery or carjacking and the Motel 6 rooms which were searched.

A search warrant affidavit must establish a nexus between contraband or evidence of a crime and the place to be searched. United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000) (citing United States v. Koelling, 992 F.2d 817, 823 (8th Cir. 1993)). However, "an officer executing a search warrant may rely in the permissibility of the issuing judge's inference that such a nexus exists when that inference has 'common sense appeal.'" United States v. Perry, 531 F.3d 662, 665 (8th Cir. 2008) (citation omitted).

Here, although the affidavit does not explicitly explain how officers determined that Evans had rented the two Motel 6 rooms, it is reasonable to infer a nexus between the evidence sought and the hotel rooms. Detective Voxland identified a man on bus surveillance who had an appearance consistent with that of the bank robber and carjacker. The bus surveillance depicted within in hours of the robbery this individual exiting the bus with a black backpack at a stop about a block away from the Motel 6. Shortly thereafter, that individual boarded a bus without the backpack. Several witnesses identified the suspect from the bus surveillance photograph as Evans. The next day, after conducting surveillance of the rooms, an individual leaving one of the rooms reported to law enforcement that Evans was inside the conjoined Motel 6 rooms.

Common sense suggests evidence related to the bank robbery and carjacking could be found in the motel rooms—Evans rented the rooms, was identified as the suspect in the bus surveillance photo, spent time in the rooms after the robbery, and potentially deposited a backpack somewhere in the vicinity of the Motel 6.

### 3. Leon good-faith exception

Finally, the Court notes that even if the warrant lacked sufficient probable cause as Evans argues, the warrant is saved by the Leon good-faith exception.[5] See United States v. Leon, 468 U.S. 897 (1984). "Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." Grant, 490 F.3d at 632. The reviewing court should consider the totality of the circumstances, "including any information known to the officer but not included in the affidavit . . . ." Id. (citation omitted).

Four instances exist in which the good-faith exception will not apply:

> (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge 'wholly abandoned his judicial role' in issuing the warrant; (3) when the affidavit in support of the warrant was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; and (4) when the warrant is 'so facially deficient' that the executing officer could not reasonably presume the warrant to be valid.

Id. (citing Leon, 468 U.S. at 923).

---

[5] Although Judge Brisbois did not note the good-faith exception in his R&R, the exception provides an alternative basis to deny Evans's motion even if probable cause was lacking.

Nothing in the record indicates that any of these four circumstances applies in this case. Evans argues that the Leon good-faith exception is inapplicable here because the police affidavit includes "conclusory assertions, and/or reckless misstatements or omissions." Objection to R&R at 2. The Court disagrees. In particular, the information Evans contends is missing from the affidavit was not so lacking as to render the warrant "entirely unreasonable" due to the additional supporting identification evidence. Moreover, to the extent Evans may be arguing that the affidavit contained a "false statement made knowingly and intentionally or with reckless disregard for its truth," the Court cannot make such a conclusion without first conducting a hearing pursuant to Franks v. Delaware 438 U.S. 154 (1978), and here no such hearing was conducted. See United States v. Maxwell, 778 F.3d 719, 731-32 (8th Cir. 2015) (requiring that determinations regarding whether an affidavit contains recklessly false statements be made only after a Franks evidentiary hearing). None of the instances which would preclude a finding under the Leon good faith exception are applicable here. As a result, the evidence seized pursuant to the December 30, 2014 warrant is admissible, Evans's objections are overruled, and the motion to suppress is denied.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Malcolm Roy Evans's Objections [Docket No. 39] to Magistrate Judge Leo L. Brisbois's March 25, 2015 Report and Recommendation [Docket No. 34] are **OVERRULED**;

2. The Report and Recommendation [Docket No. 34] is **ADOPTED**; and

3. Defendant's Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure [Docket No. 25] is **DENIED**.

BY THE COURT:

      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  May 1, 2015.